IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-00037-WYD-CBS

UNITED FIRE & CASUALTY COMPANY, an Iowa corporation,

    Plaintiff,

v.

MCCREREY & ROBERTS CONSTRUCTION COMPANY, INC., a Colorado corporation;
MARK MCCREREY, an individual;
BOULDER PLAZA RESIDENTIAL, LLC, a Colorado limited liability company;
ONE BOULDER PLAZA MANAGEMENT COMPANY, LLC, a Colorado limited liability company; and
1301 CANYON CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

THIS MATTER is before the Court on Defendant Boulder Plaza Residential, LLC's ("BPR") Partial Motion for Summary Judgment on Issue of Plaintiff's Duty to Defend [# 32], filed August 25, 2006, Plaintiff's Renewed Motion for Default Judgment Against Defendants McCrerey & Roberts Construction Company, Inc. and Mark McCrerey [# 37], filed September 13, 2006, and Plaintiff's Cross Motion for Summary Judgment [# 46], filed September 25, 2006.  The instant action for a declaratory judgment concerns a dispute over whether Plaintiff United Fire & Casualty Company has a duty to defend its insured, McCrerey & Roberts Construction Company, Inc.

("M&R"), for alleged claims of construction defects in the underlying state court litigation.

According to the undisputed facts alleged in the motions and cross-motion, on or about October 3, 2000, BPR entered into a construction agreement with M&R to construct the interior of a condominium complex in Boulder County, Colorado.  On or about February 7, 2002, M&R entered into a subcontract agreement with Summit Flooring ("Summit"), who was insured by Plaintiff, to install the hardwood floors in the complex.  Summit agreed to defend and indemnify M&R pursuant to provisions in the subcontract.  On October 1, 2003, BPR sent M&R a notice of loss relating to the hardwood floor installation.  On November 14, 2003, M&R sent Plaintiff a formal notice of claim and demand for indemnification pursuant to the policy.  On February 19, 2004, Plaintiff concluded that Summit's floor installation was sound and denied any and all claims against Summit for damage to the flooring and subsequent damage to the condominiums.

In August of 2004, BPR brought suit in the Boulder District Court against Summit and M&R for alleged defects with the hardwood floors ("first suit").  Then, in September of 2004, the homeowner's association brought a similar suit ("second suit").  These two cases were consolidated.  Plaintiff agreed to defend Summit in these two lawsuits subject to a reservation of rights but denied coverage to M&R.  Plaintiff filed this declaratory action on January 10, 2006.  On or about February 13, 2006, BPR took an assignment of M&R's claims against Summit and the Plaintiff as part of a settlement.

In the case at hand, Plaintiff brings this declaratory judgment action for a

declaration that it does not have a duty to defend M&R in the underlying state court proceeding in Boulder County District Court.  In addition, Defendant BPR filed a counterclaim against the Plaintiff asserting the following claims for relief: (1) breach of insurance contract; (2) bad faith breach of insurance contract; and (3) a declaratory judgment regarding Plaintiff's obligations to defend and indemnify M&R (as BPR purchased M&R's cross claim against Summit via an assignment prior to trial in the underlying action).  In its motion, Defendant BPR asserts that it is entitled to partial summary judgment as a matter of law on the issue of Plaintiff's duty to defend.  Plaintiff's cross-motion seeks both summary judgment on Plaintiff's duty to defend and dismissal of Defendant BPR's Amended Counterclaim as a matter of law.  Finally, Plaintiff's motion for a default judgment seeks a default judgment be entered in its favor and against Defendants M&R and Mark McCrerey.

II.     ANALYSIS

    A.     Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d

584 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

When cross motions for summary judgment are filed, the court "'is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Cross motions for summary judgment must be treated separately; the denial of one does not require the grant of another. *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

      B.      <u>Whether Summary Judgment is Appropriate on the Duty to Defend Issue</u>

I first address the arguments raised in Defendant's motion concerning the Plaintiff's duty to defend. Defendant asserts that it is entitled to summary judgment with regard to the declaratory judgment action asserted by Plaintiff because, pursuant to the controlling law, Plaintiff had a duty to defend M&R against the first and second lawsuits associated with the underlying state litigation. In response, Plaintiff argues that it denied insurance coverage to M&R because the underlying lawsuits did not raise allegations that property damage occurred before completion of Summit's operations. Plaintiff has also filed a cross-motion for summary judgment with respect to this issue.

In accordance with the requirements set forth in the subcontract agreement, M&R was listed as an additional insured on the endorsement to the insurance policy. The relevant provisions of the Additional Insured Endorsement read as follows:

      A.      SECTION II - WHO IS AN INSURED is amended to include

>    as an insured the person or organization shown in the Schedule [*i.e.,* M&R], but only with respect to your [Summit's] liability which may be imputed to that person or organization directly arising out of your [Summit's] ongoing operations performed for that person or organization. A person's or organization's status as an insured under this endorsement ends when your [Summit's] operations for that insured are completed.
>
> B.   With respect to the insurance afforded to these additional insureds, the following exclusion is added:
>
>> 2.   Exclusions
>>      This insurance does not apply to "bodily injury" or "property damage" occurring after:
>>      (1)   All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
>>      (2)   That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

When interpreting contracts, including insurance policies, Colorado courts apply the law of the state with the most significant relationship to the contract. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979); *Budd v. American Excess Ins. Co.*, 928 F.2d 344, 346-47 (10th Cir. 1991). In this case, Colorado has the most significant relationship to the contract at issue. In addition, because the present case is grounded on diversity jurisdiction, Colorado law provides the substantive rules of law which govern this action. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

Under Colorado law, the duty to defend is separate and distinct from an insurer's obligation to indemnify its insured. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n. 5 (Colo. 1991). "The duty to defend concerns 'an insurance company's duty to affirmatively defend its insured against pending claims.'" *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (citing *Constitution Assoc. v. N.H. Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996)). Whether an insurer has a duty to defend is a question of law. *Flannery v. Allstate Ins. Co.*, 49 F.Supp. 2d 1223, 1227 (D. Colo. 1999). In order to determine whether a duty defend exists in a particular case, courts utilize what is called the "complaint" rule and look to the four corners of the underlying complaint. *See Hecla*, 811 P.2d at 1089. The duty to defend arises when the facts alleged in the Complaint even potentially trigger coverage under the terms of the insurance policy. *Cyprus*, 74 P.3d at 299.

"An insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Hecla*, 811 P.2d at 1089. "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." *Id.* at 1089. "Rather, the obligation to defend arises from allegations in the complaint, which, if sustained, would impose a liability covered by the policy." *Id.* "The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy," and that the exclusions are not subject to any other reasonable interpretation. *Id.* at 1090. "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Id.* at

1090.

In the underlying litigation, the complaint alleged that many of the claims against M&R arose from Summit's liability for improperly installing the wood floors. The complaint provides the following relevant allegations:

> 30.  Upon information and belief, neither Summit nor [M&R] took proper measurements of the moisture emission rates of the gypcrete or concrete slab prior to beginning installation of the wood floors, and more importantly, the floors were not allowed to reach the recommended moisture emission rates prior to the wood floors being installed over the subfloor at the Project.
>
> 32.  Upon information and belief, the wood floor boards were delivered to One Boulder Plaza in an excessively wet condition and/or the boards were not allowed to properly acclimate prior to installation, as is recommended by the manufacturer.
>
> 33.  Summit began installing the floor boards in the Units at One Boulder Plaza on or about November 2002, and it completed the installation process on or about April, 2003.
>
> 34.  Shortly after installation was complete, many of the floors installed in the Units at One Boulder Plaza began to exhibit signs of cupping, or upward warping of the outside edges of the floor boards.
>
> 35.  Cupping typically results from higher moisture levels underneath the wood boards, and is therefore indicative of unacceptable moisture emission rates from within the subfloor.
>
> 36.  Subsequent to the floors cupping, the floors in many of the Units began to exhibit signs of disbondment, panelization, and splitting.
>
> 37. Disbondment is a failure of the adhesive to properly adhere the wood to the subfloor, and it can result from a failure to properly clean and/or prepare the subfloor surface prior to installation of a glue-down floor.

> 38. Panelization results from movement or shrinkage of the floor boards due to, among other things, drying or settling of overly wet and/or cupped wood floor boards.

Plaintiff contends that no coverage exists for M&R as an additional insured once Summit's operations of the project were completed. Further, Plaintiff denied the tender of defense for M&R because it asserts that the Complaint contained no allegations that property damage occurred before completion of Summit's operations. Instead, Plaintiff argues that the Complaint alleged that the damage occurred after the installation was complete. Defendant, on the other hand, argues that the alleged facts in the Complaint occurred while Summit was performing its operations.

Turning to my findings, Plaintiff must meet a heavy burden in order to disclaim its duty to defend. It is not sufficient for Plaintiff to argue that the underlying claims may not have occurred until after the installation was complete. After examining the allegations contained in the underlying complaint, I reject Plaintiff's argument. Plaintiff has not established that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy. The allegations in the complaint potentially trigger coverage under the terms of the insurance policy. For example, it is reasonable to conclude that after reading all of the relevant allegations in the complaint, the damage to the floors occurred during the improper installation. In other words, it was the improper installation process that damaged the wood floors. Since Plaintiff has not satisfied its heavy burden under Colorado law, I find that Plaintiff has a duty to defend M&R under the policy, and Defendant is entitled to partial summary judgment on this issue. Because Plaintiff has a duty to defend, I deny Plaintiff's motion for summary

judgment regarding this issue.

      C.     <u>Whether a Default Judgment Should be Entered Against M&R</u>

Plaintiff filed its Complaint for declaratory relief on January 10, 2006. Plaintiff argues that M&R failed to file a responsive pleading to that Complaint. As such, Plaintiff requests a default judgment be entered in its favor against M&R. However, pursuant to the law set forth in *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) and *Pratt v. South Canon Supply Co.*, 107 P. 1105, 1106 (Colo. 1910), I find that a ruling on this motion would be improper at this time as it may adversely affect the issues raised by Defendant BPR. *Id.* "The proper course is to await disposition of the trial as to the answering co-defendants. *Id.* Accordingly, my ruling on Plaintiff's motion for default judgment shall be held in abeyance until the disposition of the claims between Plaintiff and Defendant BPR.

      D.     <u>Whether Summary Judgment Should be Entered Against Defendant BPR Regarding its Counterclaims</u>

By way of background, Defendant BPR asserts the following claims in its Amended Counterclaim: (1) breach of insurance contract; (2) bad faith and willful and wanton breach of insurance contract; and (3) declaratory relief. Additionally, Defendant BPR seeks the following damages against the Plaintiff in its Amended Counterclaim: (1) M&R's settlement with BPR in the underlying litigation ($800,000 in cash and release of a $160,000 counterclaim); (2) M&R's attorney fees and costs in the underlying litigation; (3) attorney fees and costs incurred in this litigation; and (4) interest. In its cross-motion for summary judgment, Plaintiff argues that Defendant's claims asserted

in the Amended Counterclaim should be dismissed because they are barred by both the doctrine of claim preclusion and the Rooker-Feldman doctrine. I disagree and my analysis is set forth below.

First, Plaintiff asserts in its motion that all of Defendant BPR's claims asserted in the Amended Counterclaim were either litigated, or could have been litigated in the underlying case in Boulder District Court. Specifically, Plaintiff argues that Defendant BPR is attempting to recover the same damages against Plaintiff in this matter as it was seeking from Summit Flooring in the underlying litigation. Thus, Defendant's claims are barred by the doctrine of claim preclusion.

As I previously mentioned, because the present case is grounded on diversity jurisdiction, Colorado law provides the substantive rules of law which govern this action. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). Thus, I turn to the claim preclusion rules under Colorado law to determine whether the prior state court judgment bars Defendant's counterclaims in federal court. Colorado courts have noted that claim preclusion works to bar the relitigation of matters that have already been decided as well as matters that could have been decided in a prior proceeding. *Argus Real Estate Inc. v. E-470 Public Highway Authority*, 109 P.3d 604, 608 (Colo. 2005). Claim preclusion protects "litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promot[es] judicial economy by preventing needless litigation." *Lobato v. Taylor*, 70 P.3d 1152, 1165-66 (Colo. 2003). In order for a claim to be precluded by a previous decision, the following requirements must be satisfied: (1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for

relief; and (4) identity of or privity between parties to the actions. *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999).

Turning to my analysis, the essential question is whether the subject matter and the claims for relief in the instant federal action are the same as those litigated in the underlying state matter. In *Argus*, the Colorado Supreme Court explained that the question in this context is whether, in the later action, the plaintiff is seeking a remedy against the defendant "with respect to all or any part of the transaction, or series of connected transactions, out of which the [initial] action arose." *Argus*, 109 P.3d at 609. Thus, the focus of this inquiry is not on the specific cause of action asserted, but "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 281 (Colo. App. 2006).

In the underlying litigation, BPR asserted, *inter alia*, that Summit Flooring breached its contractual obligation to indemnify M&R pursuant to the terms of the Subcontract Agreement. Here, Plaintiff initiated this action seeking a declaratory judgment that it did not have a duty to defend M&R in the underlying action. Also in this case, Defendant BPR asserts counterclaims that Plaintiff breached its contractual obligation to defend M&R which constituted a breach of good faith and fair dealing. Since neither the terms of the Additional Insured Endorsement portion of the insurance policy nor Plaintiff's refusal to defend M&R was at issue in the underlying litigation, I find that the instant action is not related. Moreover, Defendant BPR is seeking

damages from a different party under a different contract (the insurance policy) based on a different duty (the duty to defend). Accordingly, this action is not barred by claim preclusion.

Second, the Plaintiff argues that Defendant BPR's Amended Counterclaim is barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal district courts are precluded from exercising appellate jurisdiction over claims "actually decided by a state court" and claims that are "inextricably intertwined with a prior state-court judgment." *Kenman Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002). Thus, the question that must be addressed is "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress . . ." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006). However, "when the relief sought by the plaintiffs would not reverse or undo the state-court judgment, *Rooker-Feldman* does not apply." *Id.* Moreover, as the Supreme Court stated in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the *Rooker Feldman* doctrine does not apply "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 1527. The Court goes on to state that a party may lose in state court and raise the identical issues in federal court "so long as the relief sought in the federal action would not reverse or undo the relief granted by the state court." *Sopkin*, 441 F.3d at 1237.

In the case at hand, Defendant BPR has requested damages in a similar amount as were sought in the underlying case. However the issue in this case, whether Plaintiff had a duty to defend M&R, is unrelated to the issues litigated in the underlying

action. Moreover, I find that this case will not disturb the judgment of the state court. The jury in the underlying action found that Summit Flooring was not negligent and did not breach its contract with M&R. This judgment was entered by the Colorado State Court. Accordingly, based on the controlling law and my earlier analysis on the issue of claim preclusion, I find that the *Rooker-Feldman* doctrine does not apply to this case.

III. <u>CONCLUSION</u>

In conclusion, for the reasons stated above, it is hereby

ORDERED that Defendant Boulder Plaza Residential, LLC's ("BPR") Partial Motion for Summary Judgment on Issue of Plaintiff's Duty to Defend [# 32], filed August 25, 2006, is **GRANTED**. It is

FURTHER ORDERED that Plaintiff's Renewed Motion for Default Judgment Against Defendants McCrerey & Roberts Construction Company, Inc. and Mark McCrerey [# 37], filed September 13, 2006, is **HELD IN ABEYANCE** until the disposition of the claims between Plaintiff and Defendant BPR. It is

FURTHER ORDERED that Plaintiff's Cross Motion for Summary Judgment [# 46], filed September 25, 2006, is **DENIED**.

Dated: March 20, 2007

                                                 BY THE COURT:

                                                 s/ Wiley Y. Daniel
                                                 Wiley Y. Daniel
                                                 U. S. District Judge