IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-00037-WYD-CBS

UNITED FIRE & CASUALTY COMPANY, an Iowa corporation,

    Plaintiff,

v.

BOULDER PLAZA RESIDENTIAL, LLC, a Colorado limited liability company; and 1301 CANYON CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

    Defendants.

**ORDER**

I.    INTRODUCTION

THIS MATTER is before the Court on both Defendant Boulder Plaza Residential, LLC's (hereinafter referred to as "Defendant" or "BPR") Partial Motion for Summary Judgment on the Issues of Indemnification and Damages (docket #209), filed September 27, 2007 and Plaintiff United Fire & Casualty's (hereinafter referred to as "Plaintiff" or "UFC") Cross Motion for Summary Judgment on the Issues of Indemnification and Damages (docket #153), filed November 9, 2007. After carefully considering the pleadings from both parties, I find that Defendant BPR's motion should be granted in part and denied in part as set forth in this Order. I further find that Plaintiff UFC's cross motion should be denied for the reasons stated below.

II.    FACTUAL BACKGROUND

Plaintiff UFC brings the instant action for a declaratory judgment seeking a

declaration that it did not have a duty to defend or indemnify its insured, McCrerey & Roberts Construction Company, Inc. ("M&R"), for alleged claims of construction defects in the underlying state court litigation. Defendant BPR, as assignee of M&R's claims against UFC, filed a counterclaim asserting the following three claims: (1) a declaratory judgment in favor of coverage; (2) breach of insurance contract, and (3) bad faith breach of insurance contract. I note that in an Order dated March 20, 2007, I found that UFC did have a duty to defend M&R in the underlying litigation under the policy, and I granted partial summary judgment in favor of the BPR on that limited issue. Thus, the only claims that remain in this action are Defendant BPR's counterclaims for breach of insurance contract and bad faith breach of insurance contract.

The issues at hand in the pending motions are (1) whether UFC had a duty to indemnify BPR and, if that is proven, (2) whether BPR is entitled to damages. BPR, as assignee of M&R, seeks damages from UFC's failure to defend M&R in the underlying litigation. However, in order to recover the damages it seeks, BPR must prove that UFC had a duty to indemnify M&R under the applicable insurance policy and that M&R incurred damages as a result of UFC's failure to defend M&R.

According to the facts alleged in the motion and cross motion, on or about October 3, 2000, BPR entered into a construction agreement with M&R to construct the interior of a condominium complex in Boulder County, Colorado. On or about February 7, 2002, M&R entered into a subcontract agreement with Summit Flooring ("Summit"), who was insured by UFC, to install the hardwood floors in the complex. Specifically, UFC issued both an initial and a renewed commercial general liability insurance policy

("CGL") to Summit. M&R was listed as an additional insured on the endorsement to the policy ("Endorsement"). The next fact is disputed. BPR contends that the CGL and Endorsement were issued to M&R as a single package. UFC, on the other had, states that the CGL was issued to Summit.

On October 1, 2003, BPR sent M&R a notice of loss relating to the hardwood floor installation, which M&R forwarded to Summit. On November 14, 2003, M&R sent UFC a formal notice of claim and demand for indemnification pursuant to the CGL for damage to the hardwood floors in the residential units of Boulder Plaza. UFC investigated the claim and on February 19, 2004, UFC concluded that Summit's floor installation was sound and denied any and all claims against Summit for damage to the flooring and subsequent damage to the condominiums. On July 27, 2004, UFC denied the tender of defense and indemnification to defend M&R related to the work performed by Summit at Boulder Plaza.

In August of 2004, BPR brought suit in the Boulder County District Court against Summit and M&R for alleged defects in connection with the hardwood floors ("first suit"). Then, in September of 2004, the homeowner's association brought a similar suit ("second suit"). These two cases were consolidated. UFC agreed to defend Summit in these two lawsuits subject to a reservation of rights but denied coverage to M&R. UFC filed the instant declaratory action on January 10, 2006. On or about February 13, 2006, BPR took an assignment of M&R's claims against Summit and UFC as part of a settlement. BPR then proceeded to trial against Summit in the Boulder County District Court in its own right and as an assignee of M&R. On February 27, 2006, the jury found

in favor of Summit on both BPR's claim and M&R's claim, finding that Summit was not negligent and did not breach its contract with M&R, and did not cause M&R any damages. The jury also found in favor of Summit and against M&R on Summit's cross claim.

M&R was insured by two other insurers, Steadfast and Canal, who provided a defense for M&R in the underlying lawsuit. Steadfast and Canal each hired a law firm to defend M&R. Steadfast hired the firm of Godin & Baity, LLC, and Canal hired the firm of Harris Karstaedt Jamison & Powers, P.C. to defend M&R. The following facts are disputed. UFC states that all of M&R's attorneys' fees and costs in the defense of the claims in the underlying lawsuit were paid for by Steadfast and Canal. M&R did not pay for out of pocket expenses in defense of BPR's claims in the underlying lawsuit. BPR, on the other hand, states that M&R did pay attorneys' fees and costs in the underlying suit. Further, all of the fees and costs incurred on behalf of M&R by Godin & Baity, LLC and Harris Karstaedt Jamison & Powers, P.C. were paid only up to the time of settlement. UFC states that M&R has not incurred any fees and costs subsequent to the settlement. After the settlement, Godin & Baity, LLC continued to represent M&R at trial and on appeal by defending M&R from Summit's cross claim against M&R. However, Godin & Baity LLC's fees post-assignment are not an element of damages being sought by BPR in this action. Instead, BPR states that it seeks attorneys' fees and costs incurred by M&R in defense of the underlying litigation, including pre and post-assignment prosecution of the contractual indemnification claim against Summit and the related state court appellate proceedings.

M&R settled BPR's claims against it in the underlying litigation for $800,000.00. Of that $800,000.00 cash settlement, $700,000.00 was paid by M&R's two insurers, and the remaining $100,000.00 was paid by M&R. In his deposition, Mark McCrerey of M&R stated that M&R was happy with the defense provided by the law firms hired by Steadfast and Canal. Neither Steadfast nor Canal assigned any claim to M&R or BPR. M&R paid attorneys' fees to the firm of Beiging, Shapiro & Buris/Steve Shapiro, Esq., who acted as coverage counsel for M&R in the underlying litigation. Mr. Shapiro provided legal assistance to M&R with respect to UFC, Steadfast, and Canal. Mr. Shapiro also assisted in negotiating the settlement in the underlying case. UFC also states that Mr. Shapiro provided legal counsel on unrelated issues as well. Mr. McCrerey testified that he has never done an assessment of the legal fees incurred by M&R to evaluate the fees expended related to Mr. Shapiro's time in dealing with issues related to UFC.

Following the jury trial in the Boulder County District Court, Summit filed a motion for attorneys' fees and costs. On November 8, 2006, the Boulder County District Court entered on Order awarding Summit all of its costs against BPR and M&R, jointly and severally, in the amount of $507,593.42. The state court considered the fee award to be costs rather than damages and found BPR primarily liable and M&R secondarily liable for payment. The state court refused to reach the merits of BPR's argument that the anti-subrogation rule prohibited the award of Summit's requested fees because the issue of insurance coverage was being litigated in the instant declaratory judgment action.

In its motion at issue in this Order, Defendant BPR asserts that it is entitled to partial summary judgment as a matter of law on the issue of UFC's duty to indemnify M&R for liability under the terms of the liability insurance policy (CGL) and pursuant to an indemnification agreement between M&R and BPR. BPR also moves for partial summary judgment on the elements of damages UFC owes to BPR as a result of UFC's breach of its contractual obligations of indemnification for liability and defense. UFC's cross motion requests that the Court grant summary judgment in favor of UFC, finding that UFC has no duty to defend to indemnify M&R and that BPR cannot establish any damages as a matter of law.[1]

III. STANDARD OF REVIEW

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). In reviewing a summary judgment motion, the court must view the evidence in the light most favorable

---

[1] I note that on April 17, 2008, the Colorado Court of Appeals issued two opinions in connection with appeals brought by BPR in the underlying state case. The Colorado Court of Appeals affirmed both the trial court's judgment in favor of Summit on BPR's contractual indemnity claim and the trial court's order awarding Summit attorneys' fees and costs. *See Boulder Plaza Residential, LLC. v. Summit Flooring, LLC*, 2008 WL 1746059 (Colo. App. 2008) and *Boulder Plaza Residential, LLC. v. Summit Flooring, LLC*, 2008 WL 1745856 (Colo. App. 2008). After reviewing the recent decisions and the parties' submissions in connection with the opinions, I find that the parties have not shown how the Colorado Court of Appeals' opinions affect the issues presented in this case.

to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 4584 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991). When cross motions for summary judgment are filed, the court "'is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  Cross motions for summary judgment must be treated separately; the denial of one does not require the grant of another.  *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

I note that when interpreting contracts, including insurance policies, Colorado courts apply the law of the state with the most significant relationship to the contract. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979); *Budd v. American Excess Ins. Co.*, 928 F.2d 344, 346-47 (10th Cir. 1991).  In this case, Colorado has the most significant relationship to the contract at issue.  In addition, because the present case is grounded on diversity jurisdiction, Colorado law provides the substantive rules of law which govern this action. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998).

IV.  <u>DUTY TO INDEMNIFY</u>

I first address the arguments raised in BPR's motion concerning UFC's duty to indemnify.  BPR first asserts that it is entitled to partial summary judgment on its breach of contract counterclaim.  BPR argues that UFC breached a duty to indemnify M&R for

liability, based on the legal obligation UFC assumed in the "Insuring Agreement" contained in both the CGL's general grant of coverage and the indemnity provision contained in Section 3.18 of the general contractor agreement between BPR and M&R. In response, UFC argues that the undisputed evidence is that UFC did not have a duty to indemnify M&R under the plain language of the additional insured endorsement since no liability of Summit can be imputed to M&R. UFC also filed a cross motion for summary judgment with respect to both this issue and the fact that BPR cannot establish any damages as a matter of law.

    A.    <u>Relevant Law</u>

Under Colorado law, the duty to defend is separate and distinct from an insurer's obligation to indemnify its insured. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n. 5 (Colo. 1991). "The duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). "Because the duty to defend encompasses any potential claims raised by the facts and the duty to indemnify relates to the actual liability imposed, this court [the Colorado Supreme Court] has considered the duty to defend to be a broader concept than the duty to indemnify." *Id.* The Colorado Supreme Court has also held that "the duty to indemnify is only triggered where the policy actually covers the alleged harm." *Id.* at 300. "The duty to indemnify arises only when the policy actually covers the harm and typically cannot be determined until the resolution of the underlying claims." *Id.* at 301. The Colorado Supreme Court's "consistent recognition that the trigger for the duty to indemnify must normally await a determination of actual

liability presupposes that indemnity flows from the nature of the ultimate verdict, judgment or settlement." *Id.* The Colorado Supreme Court instructs trial courts that when they are evaluating whether there is a duty to indemnify, courts "should look to the operative complaint as an important factor in resolving indemnity disputes." *Id.* However, courts should also "look to the facts as they developed at trial and the ultimate judgment." *Id.* "The determination of whether a duty to indemnify exists requires a factual development, as it is largely a question of fact. Extrinsic evidence may assist the trial court in determining whether and to what extent actual liability, as represented by a verdict or settlement, is covered by an existing policy." *Id.* at 301-302.

  B. <u>Coverage</u>

Pursuant to Colorado law, "[a]n insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus*, 74 P.3d at 299. "In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy." *Id.* "Courts should read the provisions of the policy as a whole, rather than reading them in isolation." *Id.* The Colorado Supreme Court cautioned that "[c]ourts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. However, because of the unique nature of insurance contracts and the relationship between the insurer and insured, courts do construe ambiguous provisions against the insurer and in favor of providing coverage to the insured." *Id.* at 299. "A court's interpretation of an insurance contract is a matter of law subject to de novo

review." *Id.*

In order to determine whether UFC had a duty to indemnify BPR, I first turn to the language of the insurance policies to establish the applicable coverage.

1. Coverage Under the Endorsement

The "additional insured" endorsement provision modifying UFC's CGL policy to include M&R as an additional insured reads as follows:

> A. Section II - Who is an Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to your liability which may be imputed to that person or organization directly arising out of your ongoing operations performed for that person or organization. A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

Applying Colorado's rules of insurance policy interpretation, after reviewing the language of the additional insured endorsement and the inclusion of M&R in the "Name of Person or Organization" section, I find that it plainly and unambiguously qualifies M&R (and BPR as assignee of M&R) as an additional insured under UFC's CGL policy.

2. Coverage Under the CGL

UFC contends that even if BPR qualifies as an additional insured in the endorsement, BPR is not entitled to indemnification based on the language of the CGL. Specifically, UFC claims that the CGL's use of "you" and "your" makes it clear that the named insured and additional insureds are provided different coverage. UFC argues that "you" and "your" refer only to the named insured, Summit. In support of this argument, UFC relies on the CGL's preamble language which states, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."

(CGL at 24.) The Declarations page of the CGL states that Summit Flooring is the Named Insured. (CGL at 8.) No other names appear on the Declarations page of the CGL. According to UFC, all of the provisions, exclusions, and definitions within the CGL which use the term "you" and "your" apply only to the named insured, Summit.

The Tenth Circuit affirmed the district court's rejection of this same argument in *Marathon Ashland Pipe Line LLC v. Maryland Casualty Co.*, 243 F.3d 1232 (10th Cir. 2001). I incorporate the Tenth Circuit's reasoning in *Marathon* in rejecting UFC's argument in this case.[2] The Tenth Circuit stated that "[a]t a minimum the use of 'you' in the policy is ambiguous as to whether it refers to additional insured and, as such, must be interpreted in their favor." *Id.* at 1241. "Reading the policy as excluding additional insureds everywhere the word 'you' is employed would make the policy's coverage amorphous, leaving additional insureds open to all sorts of unanticipated exclusions. The purpose of provisions to add insureds is to extend the policy provisions to others . . . not to change the nature of th[e] coverage." *Id* (internal citations omitted). The Tenth Circuit goes on to say that

> [t]he mere use of the word "you" in connection with the entire policy also does not place additional insureds on notice that they are excluded from its provisions. Surely Maryland Casualty could have included a plain statement in the endorsement that additional insureds were to be treated differently under the policy than named insureds through the use of the

---

[2] While the Tenth Circuit applied Wyoming law in the *Marathon* case, I find the Court's reasoning to be both instructive and persuasive. Although the Colorado courts have not addressed the precise issue presented in this case, I believe that the Colorado courts, like courts in other jurisdictions, would adopt the same reasoning as the Tenth Circuit in *Marathon.* As the Tenth Circuit notes in *Marathon*, other courts have also rejected UFC's argument. See *Prisco Serena Sturm Architects, Ltd. v. Liberty Mutual Ins.*, 126 F.3d 886, 892 (7th Cir. 1997); *Wyner v. North American Specialty Ins. Co.*, 78 F.3d 752, 756 (1st Cir. 1996); *K&W Builders, Inc. v. Merchants & Business Men's Mutual Ins. Co.*, 495 S.E.2d 473, 476 (Va. 1998).

word "you." Alternatively, Maryland Casualty could have included a plain statement in the preamble, in Section II, or in the endorsement specifying that additional insureds do not qualify as named insureds. Absent such a clear exclusion, the policy is at least ambiguous whether "you" includes endorsed additional insureds.

*Id.* at 1241-42. Adopting the Tenth Circuit's reasoning in *Marathon*, I find that after reading the CGL as a whole, it is ambiguous as to whether the preamble language makes a distinction between an additional insured such as M&R from a named insured such as Summit. I find that the endorsement can reasonably be interpreted as qualifying M&R (and BPR as assignee) as a named insured, and therefore including BPR within the scope of "you" and "your" as used in the CGL.

Having determined that BPR is a named insured under the CGL policy, I now turn to the language in the CGL that provides information regarding coverage. As the Colorado Supreme Court has held, the duty to indemnify arises when the policy actually covers the harm. The CGL, Section I, COVERAGES, Insuring Agreement, section 1.a provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (CGL at 24.) Thus, as the insured, I find that this language in the CGL states that BPR is entitled to coverage arising out of the damage that occurred during the defective floor installation process at the Boulder Plaza project.

   3.  <u>Coverage Under the General Contractor Agreement</u>

I next turn to the general contractor agreement between M&R and BPR. Section Section 3.18 of the general contractor agreement reads as follows:

> 3.18 INDEMNIFICATION
>
> 3.18.1 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease or death, or to injury or to destruction of tangible property (other than the work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 3.18.

The Colorado Supreme Court has held that "[i]ndemnity agreements, like release agreements, should be upheld as long as the language clearly and unambiguously expresses the intent of the parties." *Public Service Co. v. United Cable Television of Jeffco*, 829 P.2d 1280, 1284 (Colo. 1992). Guided by the principles of insurance policy interpretation, after considering this language, I find that M&R agreed to indemnify BPR for damages, losses, and expenses, including attorneys' fees, resulting from any negligent acts or omissions, in the performance of the work at the Boulder Plaza project. Further, Section 3.18 states, "the Contractor shall indemnify and hold harmless the Owner . . . regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder." I find that this language unambiguously expresses the intent that BPR would be indemnified by M&R. Therefore, based on the language of the CGL and Section 3.18 of the general contractor's agreement, I find that UFC has a duty, pursuant to Section I, COVERAGES of the CGL, to indemnify BPR for

any legal obligations that M&R incurred as a result of M&R's assumption of liability for property damage otherwise covered by the CGL.

### 4. Conflicting Coverage Language

The CGL policy also contains a section which excludes coverage for liability an insured assumes in a contract or agreement. Section 2. Exclusions of the CGL (the Contractually Assumed Liability Exclusion) reads in relevant part:

> 2. Exclusions
> This insurance does not apply to:
> . . .
> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or
> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
> . . .

(CGL at 25.) After interpreting the language of this section, I find that the CGL requires UFC to indemnify BPR for all legal obligations incurred by M&R arising out of the property damage at Boulder Plaza. However, the language of the additional insured endorsement is inconsistent with this section of the CGL. The relevant portion of the additional insured endorsement excludes coverage for "property damage occurring after: all work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed . . ." (CGL at 7.) These two provisions are inconsistent because the

-14-

Endorsement limits coverage to property damage arising from negligent acts by the subcontractor, Summit, which occurred while Summit was performing its job duties. The Contractually Assumed Liability Exclusion provides for coverage for liability for property damages that the insured assumed in an "insured contract." Under Section 3.18 of the general contractor agreement, which I have found to be an "insured contract", M&R assumed liability for "claims, damages, losses and expenses . . . arising out of . . . negligent acts or omissions of the Contractor, Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable . . ."

The Colorado Supreme Court addressed the issue of conflicting provisions in an insurance contract in *Simon v. Shelter General Ins. Co.*, 842 P.2d 236 (Colo. 1992). The *Simon* Court stated:

> In determining the meaning of an insurance contract and assessing whether it contains conflicting provisions, we are guided by well-settled principles of interpretation. Our starting point is, of course, the intent of the parties as manifested by the plain language of the policy. *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 289 (Colo.1981) ("Policy is not sui generis but is treated in the law in the same way as contracts are treated generally, and is to be interpreted according to the intent of the parties."); *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo.1990) ("In construing an insurance policy, words should be given their plain meaning according to common usage . . . and strained construction should be avoided." (citations omitted)). When construing the language of an insurance contract, its provisions cannot be read in isolation, but must be considered as a whole. *Security Ins. Co. of Hartford v. Houser*, 191 Colo. 189, 191, 552 P.2d 308, 310 (1976). When provisions of an insurance policy conflict, they are to be construed against the insurer and in favor of coverage to the insured. *See* 13 John A. Appleman & Jean *240 Appleman, Insurance Law and Practice § 7401, at 253-54 (1976).

*Id.* at 239. The Court further held that "the construction of an insurance contract must be ascertained by reference to what meaning a person of ordinary intelligence would

attach to it." *Id.* at 240.

As stated above, after reviewing the plain language of the CGL policy at hand and the additional insured endorsement, I find that they are in conflict. Guided by the Colorado Supreme Court's reasoning in *Simon*, I find that the conflict in these provisions must be construed in favor of coverage to BPR.

Therefore, I find that BPR, as assignee of M&R, is entitled to a declaration that UFC is obligated to indemnify M&R for liability under the policy. Accordingly, BPR's motion for partial summary judgment is granted as to this issue and UFC's cross motion for summary judgment is denied as to this issue.

## V. <u>DAMAGES AND ATTORNEYS' FEES</u>

In its motion for partial summary judgment, BPR argues that it is entitled to damages resulting from UFC's breach of its duties of indemnification and defense. Specifically, BPR maintains that under the relevant CGL and general contractor agreement provisions, BPR is entitled to recover the following elements of damages: (1) attorneys' fees and costs incurred by M&R, and by BPR as M&R's assignee, in the underlying state court litigation; (2) BPR's attorneys' fees and costs incurred in defending the instant declaratory judgment action and in prosecuting its breach of contract counterclaim; (3) the amount of M&R's settlement payment to and claim release with BPR and the Homeowners in the underlying litigation; and (4) the amount of attorneys' fees and costs awarded in favor of Summit and against BPR in the underlying litigation. UFC, in response, argues that BPR cannot recover any of its claimed damages, primarily because M&R's direct CGL carriers paid most of M&R's

defense costs and settlement payments in defending and settling the underlying litigation.

Since I have found that UFC has both a duty to defend BPR and a duty to indemnify BPR based on the language of the applicable insurance policies, I now turn to the issue of damages and attorneys' fees. Under Colorado law, "[a]n insured's duty to defend extends to all claims asserted against its insured if the allegations in the complaint support any one claim that this arguably within the policy." *Bainbridge Inc. v. Travelers Casualty Co. of Connecticut*, 159 P.3d 748, 756 (Colo. App. 2006). "General damages for a breach of the duty to defend include those flowing naturally from the breach: the costs and reasonable attorney fees incurred by the insured in defending itself against the claims asserted." *Id.* "Additionally, the insured may recover consequential damages for the breach which, if based on contract principles, include those damages that arose naturally from the breach and were reasonably foreseeable at the time of contract." *Id.*

With respect to the issue of attorneys' fees, Colorado courts have held that "[a]s a general rule, in the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by the prevailing party in either a contract or tort action." *Bernhard v. Farmers Ins. Exchange*, 915 P.2d 1285, 1287 (Colo. 1996). "This reasoning is based on the American rule, which requires each party in a lawsuit to bear its own legal expenses." *Id.*

I now turn to the applicable sections of the insurance policy at issue in this case. Section 3.18 of the general contractor agreement between M&R and BPR reads in

-17-

relevant part: "To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, . . . from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work. . ." This language appears to be a private insurance contract where M&R would indemnify BPR for attorneys' fees and costs resulting from any negligent acts or omission in the performance of the work.

While I have a strong leaning that some measure of damages and attorneys' fees should be awarded to BPR as a result of UFC's breach of its duty to defend and indemnify BPR, I find that it would be inappropriate for me to make this determination at this time. As stated in section II of this Order, there are factual disputes that are material to the issue of damages and attorneys' fees. First, there are disputes as to whether and to what extent outside insurance companies provided a legal defense to M&R in the underlying litigation. Second, there are disputes as to what attorneys' fees are attributable to the defense of the underlying lawsuit. Third, there are disputes as to whether M&R incurred any expenses in defense of the underlying litigation. Therefore, I find there are genuine issues of material fact that preclude summary judgment on the issue of damages. Accordingly, both motions for summary judgment are denied as to this issue.

VI.   CONCLUSION

In conclusion, for the reasons stated above, it is hereby

ORDERED that Defendant Boulder Plaza Residential, LLC's ("BPR") Partial Motion for Summary Judgment on the Issues of Indemnification and Damages (docket

#209), filed September 27, 2007, is **GRANTED** as to the issue of indemnification and **DENIED** as to the issue of damages. It is

FURTHER ORDERED that Plaintiff United Fire & Casualty's Cross motion for Summary Judgment on the Issues of Indemnification and Damages (docket #153), filed November 9, 2007, is **DENIED**. It is

FURTHER ORDERED that in light of my ruling, the hearing set for Friday, May 23, 2008 at 1:30 p.m. is **VACATED**.

Dated: May 13, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge