IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-00037-PAB-CBS

UNITED FIRE & CASUALTY COMPANY,
an Iowa corporation,

      Plaintiff,

v.

BOULDER PLAZA RESIDENTIAL, LLC,

      Defendant.

---

### ORDER ON PLAINTIFF UNITED FIRE'S SECOND MOTION FOR RECONSIDERATION

---

### A.  Background

This case involves a dispute regarding coverage under a commercial general liability ("CGL") insurance policy ("the Policy") issued by plaintiff United Fire & Casualty Company ("United Fire").  The facts of this case have been recounted in detail in previous orders [Docket Nos. 85, 222].  For the sake of the present motion, it suffices to note that United Fire, faced with several claims for coverage under the Policy, filed this action seeking a declaratory judgment stating that it owed no duties to defend or indemnify those claimants.  The claims were related to allegedly improper installation of and resulting damage to wood floors in a condominium complex in Boulder, Colorado. Two cases regarding the damaged floors were filed in state court and later consolidated.  In the present action, United Fire has asserted that it has no duty to defend or indemnify the originally-named defendants under the Policy for the injuries alleged in the now-consolidated state-court case.

United Fire issued the Policy to Summit Flooring, LLC ("Summit").  Summit was

the flooring subcontractor to McCrerey & Roberts Construction Company, Inc.

("McCrerey & Roberts"), the general contractor.  The Policy lists McCrerey & Roberts as

an additional insured to the extent that the liability at issue is imputed from Summit.  At

one point, McCrerey & Roberts assigned its rights under the Policy to Boulder Plaza,

the initial owner of the condominium complex.  Boulder Plaza, in turn, asserted these

purported rights in a number of counterclaims against United Fire including claims for

breach of insurance contract and bad faith breach of insurance contract [Docket No.

212].  Since this case was first filed, all of the defendants except Boulder Plaza

Residential, LLC ("Boulder Plaza") have been dismissed.

In 2006, Boulder Plaza and United Fire filed cross-motions for partial summary

judgment [Docket Nos. 32, 46] regarding the extent to which the Policy imposed upon

United Fire a duty to defend Boulder Plaza's predecessor-in-interest, McCrerey &

Roberts, in the state-court case.  On March 20, 2007, Judge Wiley Y. Daniel – the

district court judge previously assigned to this case – issued an order (the "Duty-to-

Defend Order") granting Boulder Plaza's motion for partial summary judgment and

denying United Fire's cross-motion.  *See* Order [Docket No. 85].  That order determined

that, as a matter of law, United Fire had a duty to defend McCrerey & Roberts – and by

extension, Boulder Plaza – in the underlying state-court action.  Judge Daniel noted that

under Colorado law, "[t]he duty to defend arises when the facts alleged in the Complaint

even potentially trigger coverage under the terms of the insurance policy."  Duty-to-

Defend Order at 6 (citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294,

299 (Colo. 2003)).  Judge Daniel concluded that the allegations in the state-court

2

complaints adequately demonstrated that the injury occurred within the time period covered by the Policy.  Duty-to-Defend Order at 8.  As a result, the order concluded that coverage under the Policy was potentially triggered and summary judgment in favor of Boulder Plaza on the duty-to-defend issue was appropriate.

On March 30, 2007, United Fire filed its first motion for reconsideration [Docket No. 88] of the Duty-to-Defend Order.  United Fire again argued that the injury alleged in the underlying state-court action fell outside the coverage period.  On May 3, 2007, Judge Daniel rejected United Fire's arguments as repetitive of those already raised and undeserving of reconsideration  [Docket No. 98].  He, therefore, denied the motion. United Fire then sought certification under 28 U.S.C. § 1292(b) or, alternatively, a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) regarding the duty-to-defend issue [Docket No. 106].  Judge Daniel denied both requests [Docket No. 112].

The parties also filed cross-motions for summary judgment on the issue of United Fire's duty to indemnify McCrerey & Roberts, Boulder Plaza's predecessor-in-right under the Policy [Docket Nos. 209, 153].  On May 13, 2008, Judge Daniel issued an order (the "Duty-to-Indemnify Order") granting Boulder Plaza's motion and finding that "[Boulder Plaza], as assignee of [McCrerey & Roberts], is entitled to a declaration that [United Fire] is obligated to indemnify [McCrerey & Roberts] for liability under the policy."  Order [Docket No. 222] at 16.

On October 22, 2008, this case was reassigned to me for all further proceedings [Docket No. 247].  On March 11, 2009, United Fire filed a motion for leave [Docket No. 265] to file a second motion for reconsideration of the Duty-to-Defend Order.  In requesting leave, United Fire attached its proposed motion for reconsideration.  *See* Pl.

3

United Fire & Casualty's Mot. for Recons. of Court's Order [Document No. 265-2] ("United Fire's Second Mot. for Recons."). United Fire contends that two recent decisions, one by the Colorado Court of Appeals and the other by Judge Daniel, call into question the result in the Duty-to-Defend Order. United Fire believes that these cases provide two independent bases for reconsideration. First, United Fire would like the Court to revisit, yet again, the issue of whether the complaints in the state-court action sufficiently allege an injury occurring within the Policy's period of coverage. According to United Fire, an order issued by Judge Daniel in a separate but analogous case requires a different interpretation of the Policy and the underlying complaints. United Fire's second purported basis for reconsideration rests on a Colorado Court of Appeals case issued on February 19, 2009. The case, styled *General Security Indemnity Company of Arizona v. Mountain States Mutual Casualty Co.*, 205 P.3d 529 (Colo. App. 2009), addresses the types of events which can trigger coverage under occurrence-type GCL insurance policies similar to the one at issue here.

Although the Court has not yet granted leave to United Fire to file the motion for reconsideration, the parties have fully briefed the issues in the underlying motion [Docket Nos. 270, 271, 280, 281, 282]. Because I find that no unfair prejudice attends the consideration of the motion for reconsideration and that justice is served by allowing United Fire to present its arguments, United Fire is granted leave to file its motion for reconsideration. Being fully briefed and ripe for disposition, the Court now takes up United Fire's second motion for reconsideration [Docket No. 265-2].

### B.  Motions for Reconsideration

The parties disagree about the appropriate standard of review for United Fire's present motion for reconsideration.  Boulder Plaza believes Federal Rule of Civil Procedure 59(e) governs the Court's analysis, while United Fire contends that the law of the case doctrine controls the decision.  The Duty-to-Defend Order was interlocutory.  It did not adjudicate the entire case and, when UFC asked Judge Daniel to issue a partial final judgment under Rule 54(b), he declined.  Therefore, despite inclusion of the word "judgment," orders such as the Duty-to-Defend Order, which grant partial summary judgment, are not appealable and thus are interlocutory.  *See* 10B Charles Wright, Arthur Miller, Mary Kane, Federal Practice and Procedure § 2737 (3d ed. 2009).

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *See Hatfield v. Bd. of County Comm'rs for Converse County*, 52 F.3d 858, 861 (10th Cir. 1995).  Where, after judgment has entered in a case, a party files a motion for reconsideration, courts generally construe such a motion as invoking Federal Rules of Civil Procedure 59(e) or 60(b).  *See Hatfield*, 52 F.3d at 861.  On the other hand, where a party files a motion for reconsideration prior to the entry of judgment, Rules 59(e) and 60(b) do not apply.  *Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962).  Instead, the motion falls within a court's plenary power to revisit and amend interlocutory orders as justice requires.  *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp.*, 313 F.2d at 92.

Turning to United Fire's position, I find that uncertainty exists regarding the applicability of the law of the case doctrine to reconsideration of interlocutory orders.

On the one hand, the Tenth Circuit at times has applied the law of the case doctrine to interlocutory orders.  *See Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).  However, the Tenth Circuit also has suggested that the doctrine has limited application in a court's reconsideration of its own orders prior to entry of judgment in a case.  *See Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).

Ultimately, the doubt regarding the proper analysis for reconsidering an interlocutory order is of little consequence.  In order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders.  Although not necessarily required to do so, these judges circumscribe that discretion by incorporating one of the analyses discussed above.  *See, e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT, 2008 WL 4427087, at *5-6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey & Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at * 1-2 (D. Colo. May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the Duty-to-Defend Order); *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (applying law of the case doctrine to motion for reconsideration of interlocutory order).  The differences between Rule 59(e), Rule 60(b), and the law of the case doctrine are not significant in the present case because all three accommodate United Fire's arguments regarding errors in the application of and changes to the relevant law.  *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Major*, 647 F.2d at 112.  Because United Fire's motion for reconsideration raises, at least in part, valid

arguments regarding the state of the law surrounding the Duty-to-Defend Order, I conclude that reconsideration of that order is appropriate.

### C.  Period of Coverage Under the Policy

United Fire's first argument for reconsideration and amendment of the Duty-to-Defend Order rehashes its contention that the damage to the floors occurred outside the Policy's period of coverage.  The parties agree that the Policy is an "occurrence policy." "An 'occurrence policy' confers coverage for injury or damage that occurs during the policy period, regardless of when the claim is presented."  *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007).  The Policy contains language limiting the coverage to liability incurred during certain "ongoing operations."  United Fire has repeatedly argued that the injury alleged in the state-court action occurred outside of this time period.  On each occasion, Judge Daniel disagreed and found that it was sufficiently alleged that the injury occurred within the policy period.

In its second motion for reconsideration, United Fire offers essentially the same arguments that proved unavailing both under the motions for summary judgment and the first motion for reconsideration.  However, it now presents those arguments in the context of Judge Daniel's recent order in *Royal Indemnity Co. v. American Family Mutual Insurance Co.*, No. 02-cv-2216-WYD-KLM, 2008 WL 4378737 (D. Colo. Sept. 18, 2008).  The gist of United Fire's argument is that *Royal Indemnity* represents a departure from the position Judge Daniel took in the Duty-to-Defend Order and, thus, supports amendment in this case.  United Fire's interpretation of that order is far from self-evident.  While the policy language in *Royal Indemnity* tracks with the policy language at issue in the present case, the facts against which the policies were applied

7

do not.  Ultimately, Judge Daniel's conclusion in the Duty-to-Defend Order regarding the timing of the alleged injury is reasonable and defensible.  Therefore, I decline United Fire's invitation to revisit that conclusion.  To decide otherwise, would simply rehash United Fire's past arguments and, as a matter of policy, prove inefficient.  *Cf. Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000)  ("Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider is not at the disposal of parties who want to rehash old arguments." (internal quotation marks omitted)).  Perhaps more importantly, the issue of the timing of the "occurrence" has little ultimate impact on this case because the second argument raised in the motion for reconsideration is dispositive on the duty-to-defend question.

### D.  An "Occurrence" Under the Policy

On February 19, 2009, well after Judge Daniel issued the Duty-to-Defend Order and the order denying United Fire's first motion for reconsideration, the Colorado Court of Appeals issued an opinion which addresses insurance policy language identical to language contained in the Policy.  The language in the United Fire policy states that coverage "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an '*occurrence*' that takes place in the 'coverage territory' . . . ."  United Fire's Second Mot. for Recons., ex. 2 (CGL Policy) at 9 (emphasis added).  The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  United Fire's Second Mot. for Recons., ex. 2 (CGL Policy) at 14.  The policy does not define "accident."

In interpreting this language, the panel in *General Security Indemnity Company of Arizona v. Mountain States Mutual Casualty Co.* held that "a claim for damages arising from poor workmanship, standing alone, does not allege an accident that constitutes a covered occurrence, regardless of the underlying legal theory pled." 205 P.3d 529, 534 (Colo. App. 2009). *General Security* extended the reasoning of an earlier case that held that poor workmanship constituting a breach of contract generally did not qualify as an accident under occurrence CGL insurance policies. *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 534 (citing *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196 (Colo. App. 2003)). *General Security* for the first time applied the rationale behind *Hottenstein* to tort and breach of warranty claims. *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 534. United Fire argues that *General Security* applies in this case to exclude coverage of the injury alleged in the state-court action. Boulder Plaza responds that *General Security* is either distinguishable or bad law and that there are avenues to the duty to defend which are independent of *General Security*.

Boulder Plaza first contends that the existence of the "Additional Insured" endorsement – the means by which the Policy covers McCrerey & Roberts – distinguishes this case from *General Security*. However, it is not entirely clear why Boulder Plaza believes this to be so. On the one hand, the mere existence of a subcontractor is not a sufficient basis for distinction. *See Adair Group, Inc. v. St. Paul Fire and Marine Ins. Co.*, 477 F.3d 1186, 1188 (10th Cir. 2007). On the other hand, the Court sees no reason why the language of the "Additional Insured" endorsement would expand coverage for McCrerey & Roberts beyond what is available to its flooring subcontractor, Summit.

The endorsement provides coverage for McCrerey & Roberts in limited circumstances: "only with respect to [Summit's] liability which may be imputed to [McCrerey & Roberts] directly arising out of [Summit's] ongoing operations performed for [McCrerey & Roberts]." Boulder Plaza Residential, LLC's Resp. to Pl. United Fire & Casualty's Mot. for Leave to File Mot. for Recons. [Docket No. 270] ("Boulder Plaza's Resp."), ex. A at 1. It appears that Boulder Plaza would like this language to provide broader coverage to McCrerey & Roberts under the Policy than is afforded to Summit, who is the original insured. The fact that the "Additional Insured" endorsement is predicated on the imputation of liability under the Policy – "liability which may be imputed"– precludes this result. Therefore, to the extent that *General Security* precludes coverage for liability incurred by Summit, so too does it preclude coverage for the imputation of that liability to McCrerey & Roberts.

Boulder Plaza's second argument with respect to *General Security* is that the exception expressly outlined in that case applies here. As the court in *General Security* explained: "a corollary to the majority rule is that an 'accident' and 'occurrence' are present when consequential property damage has been inflicted upon a third party as a result of the insured's activity." *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 535. According to Boulder Plaza, the state-court complaints allege such consequential damage to third parties. However, Boulder Plaza fails to demonstrate that fact.

The state-court complaints put forth a rather straightforward story: (1) the subcontractor was engaged to install flooring to certain specifications; (2) having failed to follow those specifications, the flooring was damaged; (3) because the floor was damaged, the owners were unable to use it and were forced to repair or replace it.

10

Boulder Plaza now attempts to divide up the damage in a way that serves its interests in this litigation.  For example, Boulder Plaza claims that there was consequential damage to the "flooring system" and from the "loss of use" suffered by the owners of the units. However, to the extent that the "flooring system" consists of something more than the product installed by the subcontractor, there are no allegations that it was damaged. Furthermore, all other references to damages in the complaint relate directly to the flooring itself; any "loss of use" was the loss of use of the floor.[1]

*General Security*'s exception for "additional or consequential property damage," *General Security*, 205 P.3d at 538, focuses first on the object of the work involved and second on whether there also was damage to something other than the object of such work.  In other words, to fall within the consequential-damage exception, the damage must be to something other than the work product itself.  This fact is aptly demonstrated by the case which *General Security* primarily cited for the existence of the consequential-damage exception, *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d Cir. 1993).  The Second Circuit, in discussing its previous cases, explained that "a CGL policy did not provide coverage for a claim against an insured for the repair of faulty workmanship that damaged *only the resulting work product*" and distinguished such a case from one in which the insured "caused damage to *other property* of the purchaser." *J.Z.G. Resources, Inc.*, 987 F.2d at 102 (emphasis added).  This reading also finds

---

[1] To the extent that Boulder Plaza now alleges that the "loss of use" referred instead to "loss of use" of the entire condominium units in which the damaged floors were installed, the state-court complaints do not demonstrate facts supporting this assertion. Without a specific citation to such a claim, broad references to potential consequential damages will not be expansively interpreted and will not satisfy the exception in *General Security*.  *See General Security*, 205 P.3d at 537-38.

support in other cases cited by *General Security*'s discussion of the consequential-damage exception. *See Auto-Owners Ins. Co. v. Home Pride Cos.*, 684 N.W.2d 571, 578-79 (Neb. 2004) (faulty installation of roof shingles that caused consequential damage to roof structures and other buildings was sufficient to constitute an occurrence); *American Employer's Ins. Co. v. Pinkard Constr. Co.*, 806 P.2d 954, 955 (Colo. App.1990) (coverage existed when the poor workmanship in using the wrong material for a roof installation led to the roof collapsing, which caused additional property damage); *Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11, 13 (Colo. App.1985) (coverage when the poor workmanship created an exposure to continuous condition, which resulted in additional property damage). Furthermore, although Boulder Plaza insinuates that "loss of use" of the floors would be sufficiently independent, I disagree. Allowing an insured to separate out the "loss of use" of the work product would effectively cause the exception to swallow the rule. Therefore, because the state-court complaints allege damage only to the work product, i.e., the flooring, they present claims for damages arising solely from poor workmanship, not consequential property damage inflicted upon a third party. Therefore, the exception from *General Security* does not apply.

Boulder Plaza's third attempt at distinguishing the present case is rooted in *General Security*'s focus on fortuity. The Court of Appeals noted that for an event to qualify as an accident, and thereby trigger coverage under an occurrence policy, the event must be fortuitous. *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 534, 535, 536. Boulder Plaza argues that one of the alleged causes of the damage to the flooring – the amount of moisture in the subflooring – was such a fortuitous event. I disagree.

12

"Fortuitous" means "occurring by chance."  Merriam-Webster's Collegiate Dictionary 493 (11th ed. 2007).  In the present case, rather than occurring by chance, the problematic moisture levels were fully anticipated.  According to the state-court complaints, the installation instructions for the flooring required McCrerey & Roberts and its flooring subcontractor to measure the moisture levels and refrain from installing the floor until the moisture reached an acceptable level.  *See* United Fire's Second Mot. for Recons., ex. 3 ¶¶ 24, 29; ex. 4 ¶¶ 21, 22.  The complaints allege that McCrerey & Roberts and its flooring subcontractor, Summit, failed to comply with these instructions.  *See* United Fire's Second Mot. for Recons., ex. 3 ¶ 30; ex. 4 ¶ 23. Therefore, the moisture issue was an anticipated, not fortuitous, event.  The problem, instead, was with McCrerey & Roberts' and Summit's alleged failure to measure that moisture, as was their responsibility.  As such, this represents a clear example of alleged defective workmanship.  And, as discussed above, "defective workmanship is not a fortuitous event that constitutes an accident."  *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 536.

In the event that its attempts to distinguish *General Security* prove unavailing, Boulder Plaza offers a backup course of action: ignore *General Security* altogether as contrary to the Colorado Supreme Court's interpretation of the word "accident" and, more generally, to the rules governing contract interpretation.  While this Court, sitting in diversity, need not necessarily follow the dictates of an intermediate state appellate court, such decisions are properly viewed as persuasive as to how the state supreme court might rule.  *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996).  To the extent that the Court finds the analysis in *General Security* persuasive, Boulder Plaza

requests that the issues raised therein be certified to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21.1.

It is not clear which Colorado Supreme Court cases Boulder Plaza believes conflict with *General Security*'s definition of "accident." *General Security* relied on the definition used in several opinions of the Court of Appeals: "an unanticipated or unusual result flowing from a commonplace cause." *General Sec. Indem. Co. of Ariz.*, 205 P.3d at 534 (citing *Hoang v. Monterra Homes (Powderhorn) LLC*, 129 P.3d 1028, 1034 (Colo. App. 2005), *rev'd on other grounds*, 149 P.3d 798 (Colo. 2007); *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1201 (Colo. App. 2003); *Fire Ins. Exchange v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998)). The Court is unaware of conflicting Supreme Court case law. *Cf. Carroll v. CUNA Mut. Ins. Soc.*, 894 P.2d 746, 753 (Colo. 1995) ("An unanticipated or unusual result flowing from a commonplace cause may be an accident.").

The Colorado Supreme Court has explained that "as long as the resulting injury or death is unexpected, unintended, and unforeseeable then the injury or death is accidental." *Carroll*, 894 P.2d at 752. The rule in *General Security* honors this dictate. By ruling that poor workmanship, by itself, is not "accidental," *General Security* acknowledges that both the cause – the poor workmanship – and the effect – the damage to the work product – are not only foreseeable, they are typically addressed in the contract of engagement and the specifications that attend a construction project. There do not appear to be any interpretive canons which would change this result, thereby broadening the term "accident" to include the quality of one's work product.

14

Therefore, there is no reason to expect that the Colorado Supreme Court would decide this matter otherwise.

Additional support for *General Security*'s holding can be found in the fact that it follows an established line of similarly-reasoned opinions in Colorado. *See McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 522 (Colo. App. 2004); *Union Ins. Co. v. Hottenstein*, 83 P.3d 1196 (Colo. App. 2003); *see also Adair Group, Inc. v. St. Paul Fire & Marine Ins. Co.*, 477 F.3d 1186 (10th Cir. 2007). The holding follows the majority rule among the states. *See General Sec. Indem. Co. of Ariz.*, 205 P.3d at 535 (listing cases). Furthermore, a number of cases in this District have acknowledged and applied *General Security*'s ruling. *See American Family Mut. Ins. Co. v. Teamcorp., Inc.*, --- F. Supp. 2d ----, 2009 WL 3077836 (D. Colo. Sept. 22, 2009); *Greystone Const., Inc. v. National Fire & Marine Ins. Co.*, 649 F. Supp. 2d 1213, 1218 (D. Colo. 2009). Therefore, while this Court, sitting in diversity, need not necessarily follow the dictates of the intermediate state appellate court, there is every reason to expect that the Colorado Supreme would reach the same result. Therefore, I follow the rule in *General Security* and decline Boulder Plaza's request to certify the question to the Colorado Supreme Court.

### E. Alternate Bases for the Duty to Defend

According to Boulder Plaza, sources of United Fire's duty to defend exist independently of those identified in the Duty-to-Defend Order. The first purported basis relates to the second order granting partial summary judgment, the Duty-to-Indemnify Order. Because I conclude that the portions of the Duty-to-Indemnify Order upon which

Boulder Plaza relies are deserving of reconsideration as well, they will not serve the purposes Boulder Plaza seeks.

In finding that United Fire owed McCrerey & Roberts and, by assignment, Boulder Plaza a duty to indemnify, the Duty-to-Indemnify Order first looked to the "Additional Insured" endorsement discussed above. *See* Duty-to-Indemnify Order at 10-12. The Duty-to-Indemnify Order concluded that, based upon the Tenth Circuit's decision in *Marathon Ashland Pipe Line LLC v. Maryland Casualty Co.*, 243 F.3d 1232 (10th Cir. 2001), McCrerey & Roberts was insured under the Policy, not just for imputed liability, but also for liability it incurred directly.

However, the language identifying additional insured parties in *Marathon* differed in significant ways from the provision in the present case. In *Marathon*, the endorsement stated only: "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule." *Marathon Ashland Pipe Line*, 243 F.3d at 1241. The court in *Marathon* concluded that "[t]his amendment, by its own language, adds Marathon as an 'insured,' and does not relegate it to a lesser status than named insureds under the policy." *Marathon Ashland Pipe Line*, 243 F.3d at 1241. By contrast, the provision at issue in the present litigation explicitly makes such a relegation:

> Who is An Insured is amended to include as an insured the person or organization shown in the Schedule, *but only with respect to your liability which may be imputed to that person or organization directly arising out of your ongoing operations performed for that person or organization.* A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

Boulder Plaza's Resp., ex. A at 1 (bold-face type omitted) (emphasis added). Therefore, while McCrerey & Roberts is shown in the Schedule, because that is the only means by which it is insured under the Policy, the imputation limitation cited above unambiguously applies to it.

As a result, the conclusion in the Duty-to-Indemnify Order – that McCrerey & Roberts is independently insured beyond liability imputed from the flooring contractor, Summit – cannot stand. Due to this fact, the provision of the Policy related to "insured contracts" does not apply to the direct agreement between McCrerey & Roberts and Boulder Plaza. Because Summit was not a party to that contract, McCrerey & Roberts' liability under that agreement cannot be said to be imputed from Summit. Because the partial summary judgment previously granted to Boulder Plaza on the duty-to-indemnify issue relied so heavily on this contract as the source of United Fire's duty to indemnify, that decision must be vacated and the order amended appropriately. For the same reasons the contract between McCrerey & Roberts and Boulder Plaza does not create a duty to indemnify under the Policy, it also does not create a duty to defend.

Boulder Plaza's second and final argument for an alternative basis for United Fire's duty to defend asserts that facts outside of the state-court complaints allegedly known by United Fire properly triggered the duty to defend. However, it does not appear that any of these "facts" would have an impact in light of the legal standards discussed previously in this order. The only "fact" that comes close is the assertion that a United Fire claims adjuster wrote in a letter that she regretted to deny McCrerey & Roberts' "claims against Summit Flooring LLC for the resulting damage to the flooring and *subsequent damage to the units*." Boulder Plaza's Resp. at 24 (citing ex. E at 1)

17

(emphasis added).  However, there is no indication in the letter, in the attached report upon which the letter was based, or anywhere else in the record what that "subsequent damage to the units" might be.  In the absence of an indication of actual damage to the unit, this statement appears to be an inartful statement acknowledging that a damaged floor, as a component of a condominium unit, has an impact on the unit as a whole.  As discussed above, however, this is not sufficient to evade the limitations imposed by the rule in *General Security*.

United Fire argues that the Court should not consider evidence extrinsic to the state-court complaints in determining the duty to defend.  *See* Pl. United Fire & Casualty's Reply in Supp. of Mot. for Recons. [Docket No. 271] at 9 (citing *Cotter Corp. v. American Empire Surplus*, 90 P.3d 814, 827 (Colo. 2004); *Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556, 563 (Colo. 1996)).  Ultimately, the Court need not address the propriety of considering this extrinsic evidence because, either way, that evidence is insufficient to change the outcome of this case.

Therefore, the Duty-to-Defend Order which granted partial summary judgment on the duty-to-defend issue must be amended in light of subsequent developments in Colorado law, namely those announced in *General Security*, 205 P.3d at 534. Furthermore, upon further review, the Duty-to-Indemnify Order also must be amended. I now conclude that, as a matter of law, United Fire did not have a duty to defend or duty to indemnify McCrerey & Roberts in the state-court actions at issue in this case. As a result, Boulder Plaza's motion for partial summary judgment on the duty-to-defend issue [Docket No. 32] is denied and United Fire's cross-motion [Docket No. 46] is granted.  Furthermore, Boulder Plaza's motion for partial summary judgment on the

18

duty-to-indemnify issue [Docket No. 209] is denied and United Fire's cross-motion [Docket No. 153] is granted.

### F.  Ancillary Matters

Also presently pending before the Court is Boulder Plaza's motion to strike [Docket No. 272] a portion of United Fire's reply [Docket No. 271] or, in the alternative, leave for Boulder Plaza to file a surreply to United Fire's reply.  A district court must permit a surreply where it relies on new materials – i.e., new evidence or new legal argument – raised in a reply brief.  *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006).  However, where the materials are not new or a court disregards any materials that are, that court need not permit a surreply.  *See Green v. New Mexico*, 420 F.3d 1189, 1196-97 (10th Cir. 2005).  Here, the Court disregarded the legal argument which Boulder Plaza claims United Fire raised for the first time in a reply.  Therefore, the motion to strike is moot and is denied as such.

"It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."  *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009).  Therefore, Boulder Plaza's counterclaim for bad faith breach of contract is no longer viable.  Therefore, with all the claims in this case disposed of, all additional pending motions [Docket Nos. 283, 284, 285, 286, 292, 293, 295, 296, 301, 302] are denied as moot and judgment shall enter in favor of United Fire.

### G.  Conclusion

Based on the foregoing, it is

**ORDERED** that plaintiff United Fire and Casualty Company's motion for leave to file a motion for reconsideration [Docket No. 265] is GRANTED.  It is further

**ORDERED** that plaintiff United Fire and Casualty Company's motion for reconsideration [Docket No. 265-2] is GRANTED in part and DENIED in part.  For the reasons explained above, the Court, upon reconsideration, amends the two partial summary judgment orders in this case [Docket Nos. 85, 222].  In doing so, the partial summary judgments previously entered in favor of Boulder Plaza are vacated.  Instead, United Fire is entitled to judgment as a matter of law on the issues of its duty to defend and duty to indemnify McCrerey & Roberts in the underlying state-court cases. Furthermore, because this order abrogates Boulder Plaza's breach of insurance contract claim, summary judgment is also appropriate on Boulder Plaza's bad faith breach of insurance contract claim, declaratory judgment claim, and exemplary damages claim [Docket No. 212].  It is further

**ORDERED** that defendant Boulder Plaza's motion to strike [Docket No. 272] a portion of plaintiff United Fire's reply [Docket No. 271] is DENIED as moot.

**ORDERED** that all additional pending motions [Docket Nos. 283, 284, 285, 286, 292, 293, 295, 296, 301, 302] are DENIED as moot and all settings, including the trial preparation conference set for February 26, 2010 and the trial set to begin on March 8, 2010, are VACATED.  It is further

**ORDERED** that, with this case fully adjudicated, judgment shall enter in favor of counterclaim defendant United Fire & Casualty Company and against counterclaim plaintiff, Boulder Plaza Residential, LLC on Boulder Plaza's counterclaims for breach of

insurance contract, bad faith breach of insurance contract, declaratory relief, and

exemplary damages.

DATED February 1, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge